IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JIM M. PECKEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-433 |
| BANK OF AMERICA, N.A., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Jim M. Peckey ("Peckey" or "Plaintiff") brings this action against Bank of America, N.A. ("BoA") and Specialized Loan Servicing, LLC ("SLS"), alleging a series of common law and statutory violations.[1] Currently pending is Defendant SLS's Motion to Dismiss Counts Seven, Eight, and Nine of Plaintiff's First Amended Complaint (ECF No. 32). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant Specialized Loan Servicing, LLC's Motion to Dismiss (ECF No. 32) is DENIED.

## BACKGROUND

This Court accepts as true the facts alleged in Plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This case arises out of transactions related to a home mortgage loan made by Defendant BoA to Plaintiff Jim M. Peckey in 2006 for a property

---

[1] Counts I-VI assert claims against the Bank of America. The claims against Specialized Loan Servicing are set forth in Counts VII, VIII, and IX.

1

located at 7 Alexander Court, Owings Mills, MD 21117 ("the Property"). Pl.'s First Am. Compl., ¶ 11-13, ECF No. 29. Plaintiff subsequently defaulted on the loan and began negotiating with BoA in order to avoid foreclosure and/or limit any deficiency he could owe after a forced transfer of the property. *Id.* at ¶ 16-26. Beginning in March of 2011, BoA offered Mr. Peckey the opportunity to participate (1) in a short sale transfer of the Property or (2) in a deed in lieu of foreclosure ("DIL") transaction conveying the Property to BoA. Pl.'s Ex. 2, 6a-6g.[2]

Mr. Peckey accepted BoA's offer to participate in a DIL transaction, and on June 29, 2012, BoA informed Mr. Peckey that his request for a DIL through the federal government's Home Affordable Foreclosure Alternatives ("HAFA") Program was approved.[3] Pl.'s Ex. 6a. Mr. Peckey was required under the terms of the agreement to take several steps to finalize the DIL transaction. Pl.'s Ex. 6b. Specifically, Mr. Peckey was required to complete certain documents (Assignment of Unearned Insurance Premium, Surrender of Possessions Agreement, Move Out Agreement, Personal Property Release, W-9 form) and to vacate the property by August 9, 2012. *Id.* The record before this Court indicates that Mr. Peckey fulfilled all requisite steps, and the transaction closed on or around September 14, 2012.[4]

---

[2] Along with his original Complaint, Plaintiff filed a Notice of Lengthy Exhibit (ECF No. 1-2). Paper copies of the Exhibits were received by the Clerk's Office on February 20, 2014.

[3] Under the HAFA Program, an individual who cannot afford his mortgage payment may elect to participate in a short sale or a Deed in Lieu of foreclosure transaction. Making Home Affordable.Gov: Home Affordable Foreclosure Alternatives (HAFA) Program, http://www.makinghomeaffordable.gov/programs/exit-gracefully/Pages/hafa.aspx (last visited April 10, 2015). The HAFA Program falls under the authority of the Making Home Affordable initiative, which was established in the wake of the 2008 recession by the Emergency Economic Stabilization Act, 12 U.S.C. § 5201, *et seq. See id.*

[4] While Plaintiff has not provided a copy of the notarized Deed in Lieu of Foreclosure, he has produced a partially executed copy of the DIL and accompanying correspondence with BWW Law Group, LLC, counsel for BoA in the DIL transaction. Pl.'s Ex. 7-9. The September 13, 2012 letter from Kristen VanBuren of BWW bears a stamp reading "Your Copies." Pl.'s Ex. 7. This stamp suggests that BWW or its client, BoA, is in possession of the fully executed and notarized DIL. Accepting as true all facts alleged in Plaintiff's Complaint, it appears likely that the DIL was fully executed and notarized, and that the transaction was completed as contemplated by the Parties.

Pl.'s Ex. 7-11. In satisfaction of one of its obligations under the DIL agreement, BoA issued a check in the amount of $3,000 to Mr. Peckey on October 10, 2012. Pl.'s Ex. 10.

BoA subsequently sent Mr. Peckey a letter dated October 12, 2012, stating that his loan for the Property would be serviced by SLS beginning on November 1, 2012. Pl.'s Ex. 12. BoA sent Mr. Peckey another letter on November 9, 2012, asserting that it was unable to offer him a HAFA Deed in Lieu of Foreclosure. Pl.'s Ex. 13.

On November 9, 2012, SLS sent Mr. Peckey a "Welcome" letter stating that it had taken over loan servicing for the Property's mortgage. Pl.'s Ex. 14. Three days later, Mr. Peckey received a Monthly Payment Notice from SLS demanding $55,190.29 for the current payment ($2,199.48), past due payment ($44,089.16), and late charges/fees ($8,901.65). Pl.'s Ex. 16. In response, Mr. Peckey faxed a letter to SLS on November 12, 2012 explaining that he had "SUCCESSFULLY COMPLETED A HAFA DEED IN LIEU PROGRAM WITH BANK OF AMERICA." Pl.'s Ex. 17 (emphasis in original). He also requested that SLS cease and desist making debt collection phone calls to his home. *Id.* SLS continued to demand payment on the loan and related expenses. Pl.'s Ex. 19-21, 23-28. The latest mortgage statement sent by SLS to Mr. Peckey is dated July 18, 2013 and demands $68,323.17. Pl.'s Ex. 28.

Credit reports on Mr. Peckey dated March 31, 2013 indicate (1) that the BoA mortgage was closed and terminated by the DIL, and (2) that Mr. Peckey had an active deficiency with SLS for the mortgage. Pl.'s Ex. 29, 30. The credit reports also indicate that SLS first made a report in Mr. Peckey's credit file in February 2013. *Id.*

Mr. Peckey filed suit against BoA and SLS on February 12, 2014, alleging a series of

common law and statutory violations arising from the mortgage and DIL transactions. Pl.'s Compl., ECF No. 1. With this Court's approval (ECF No. 28), on November 26, 2014, Plaintiff filed a First Amended Complaint (ECF No. 29). Defendant SLS subsequently moved to dismiss all claims pending against it (ECF No. 32), while Defendant BoA filed an Answer (ECF No. 31) on December 10, 2014.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also*

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, __ F.3d __, 2015 WL 1088931, *11-12 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from

5

conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

## ANALYSIS

I.  **Count Seven – Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.**

In Count Seven of his First Amended Complaint, Plaintiff claims that SLS violated the FDCPA "by attempting to collect on a debt that no longer exists" and by "falsely represent[ing] the character, amount, and legal status of the debt." Pl.'s First Am. Compl., ¶¶ 197, 200. SLS, however, contends that Plaintiff's claims are barred by the one-year statute of limitations on FDCPA claims and thus must be dismissed as untimely. Def.'s Mot. Dismiss, 3-5, ECF No. 32-1.

The FDCPA provides that actions may be brought under the Act "within one year from the date on which the violation occurs." 15 U.S.C.A. § 1692k(d). This Court has noted that, "[g]enerally, the statute of limitations begins to run when a communication violating the FDCPA is sent." *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004). *See also Boccone v. Am. Express Co.*, No. CIV. A. RDB-05-3436, 2007 WL 2914909, at *4 (D. Md. Oct. 4, 2007); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012).

Plaintiff alleges that at least two independent acts of SLS violated the FDCPA: (1) the attempt to collect the non-existent debt; and (2) the false representation regarding the character, amount, and legal status of the debt. Pl.'s First Am. Compl., ¶¶ 197, 200. SLS

first attempted to collect the non-existent debt on either November 9 (the date of the "Welcome" letter) or November 12, 2012 (the date of the first "Monthly Payment Notice").[5] Pl.'s Ex. 14, 16. Under the FDCPA, tolling begins on the date of the first wrongful communication. *Akalwadi*, 336 F. Supp. 2d at 501. As Plaintiff's original Complaint was not filed until February 12, 2014—fifteen months after the alleged violation—it does appear that SLS's attempt to collect the non-existent debt is outside the statute of limitations period.

On the other hand, SLS's alleged false representation regarding the debt is not time barred. As this Court has explained, the date on which the debtor accesses his credit report is when tolling begins for this type of alleged FDCPA violation. *Akalwadi*, 336 F. Supp. 2d at 501 (citing Theodore Eisenberg, *Debtor–Creditor Law*, § 8.04[10] (2004)). The credit reports submitted as Exhibits 29 and 30 were both accessed on March 31, 2013, less than a year before Plaintiff filed this action. Pl.'s Ex. 29, 30. Accepting as true all facts alleged in Plaintiff's First Amended Complaint, *Aziz*, 658 F.3d at 390, this violation of the FDCPA occurred within the one-year period prior to Plaintiff's Complaint.

Moreover, the pleadings and accompanying exhibits indicate that SLS first reported a delinquency to the TransUnion, Equifax, and Experian credit bureaus in February of 2013.[6] Pl.'s Ex. 29-31. While the exact date on which SLS reported the alleged delinquency to the credit bureaus is not stated in the papers before this Court,[7] it is certainly plausible that the

---

[5] The distinction between the two dates is immaterial in this case, as even the later, November 12 date was fifteen months before Plaintiff filed this action (February 12, 2014).
[6] The false representation of a debt to a credit bureau is actionable under 15 U.S.C. § 1692e.
[7] The credit reports submitted by Plaintiffs as Exhibits 29, 30, and 31 indicate only the month in which SLS filed a report with the credit bureaus. Pl.'s Ex. 29-31.

reporting did not occur until *after* February 12, 2013—that is, within one year of the February 12, 2014 filing of Plaintiff's original Complaint.

Thus, the alleged false representation under the FDCPA is timely. As a result, Defendant SLS's Motion to Dismiss Count Seven of Plaintiff's First Amended Complaint is DENIED.

II. **Count Eight – Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Com. Law, § 14-201, *et seq.***

In Count Eight, Plaintiff claims that SLS violated the MCDCA by attempting to collect a non-existent debt and by reporting false information to the credit bureaus. Pl.'s First Am. Compl, ¶¶ 206-212. In response, SLS argues that Plaintiff's MCDCA claim should be dismissed because Plaintiff has not sufficiently alleged that: (a) SLS had knowledge that the debt did not exist; and (b) the damages sought were proximately caused by SLS's violation of the Act.

a. **Whether SLS had knowledge that the debt did not exist**

Mr. Peckey's claim under the MCDCA is based on Md. Code Ann., Com. Law § 14-202(8), which provides that a debt collector may not, "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id.* This Court has held that liability under § 14-202(8) arises where the defendant acted "with actual knowledge or reckless disregard as to the falsity of the information…" *Akalwadi*, 336 F. Supp. 2d at 511.

Accepting as true all facts alleged in Plaintiff's First Amended Complaint, Plaintiff has sufficiently pled that SLS possessed actual knowledge that the debt it sought to collect from Mr. Peckey did not exist. Mr. Peckey alleges that he provided documentation—including the DIL—to SLS as proof that the debt at issue had been satisfied and that Mr. Peckey was no longer the owner of the Property. Pl.'s First Am. Compl., ¶¶ 207-208. With this documentation, SLS would have had actual knowledge that the debt had been satisfied and, as a result, that its right to pursue Mr. Peckey did not exist.

Moreover, even if SLS did not have actual knowledge that the debt did not exist, Plaintiff has sufficiently pled under *Twombly* and *Iqbal* that SLS acted with "reckless disregard as to the falsity of the information. . ." *Akalwadi*, 336 F. Supp. 2d at 511. First, on the same day that SLS issued its first Monthly Payment Notice to Mr. Peckey, November 12, 2012, Mr. Peckey sent a facsimile message to SLS indicating that the BoA loan had been satisfied and title transferred by the DIL. Pl.'s Ex. 17. SLS's alleged failure to investigate this prompt response regarding a loan that it began servicing less than two weeks prior sufficiently alleges a reckless disregard to the possibility that the information it had received from BoA, the prior loan servicer, was false.

SLS's reckless disregard to the falsity of the information is further alleged to be reflected by its failure to consider the information readily available in Mr. Peckey's credit history. That is, in all three credit reports produced by Plaintiff in this case, it is immediately apparent that the DIL transaction with BoA was completed in September 2012 and reported to the credit bureaus in that same month. Pl.'s Ex. 29-31. Had SLS merely reviewed the

credit reports before seeking to service the mortgage in November 2012, it likely would have realized that the debt it was seeking to collect did not exist. Moreover, had SLS reviewed the credit reports before making its own submissions to the credit bureaus in February 2013, it again would have seen that the debt had been satisfied. Instead, SLS allegedly continued to demand payment months after making its own submission to the credit bureaus,[8] further demonstrating a reckless disregard for the falsity of the debt in question.

Finally, even if this Court were to assume, *arguendo*, that SLS believed that it was trying to collect only a deficiency remaining after the DIL transaction, the content of SLS's communications with Mr. Peckey contradict such a conclusion.[9] From SLS's "Welcome" message of November 9, 2012 through SLS's final Monthly Mortgage Statement of July 18, 2013, the letters plainly indicate that the payment sought is for a mortgage on the Property. Pl.'s Ex. 14-16, 18-21, 23-28. There is no reference at all to the possibility that SLS was merely seeking to collect on a deficiency after the DIL transaction. *Id.* Each of the letters notes the Property's address. SLS even sent notice of its intent to foreclose on the property and a letter reminding Mr. Peckey of his obligation under the alleged mortgage to maintain homeowner's insurance on the Property, which he no longer owned at that point. Pl.'s Ex. 20, 25. Under these alleged facts, Plaintiff has sufficiently pled that SLS possessed the requisite knowledge to violate the MCDCA.

---

[8] SLS sought payment from Mr. Peckey as late as July 18, 2013—roughly five months after starting to report the false debt to the credit bureaus. Pl.'s Ex. 28.

[9] To be clear, there is no indication that a deficiency existed after the DIL transaction; avoiding the risk of a deficiency is one of the very reasons why Mr. Peckey engaged in the DIL transaction in the first place.

### b. Whether the damages sought were proximately caused by SLS's alleged violation of the MCDCA

SLS further argues that the damages sought by Plaintiff under the MCDCA were not proximately caused by SLS's alleged violation of the Act. Under the MCDCA, "[a] collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." Md. Code, Com. Law § 14-203.

In Maryland, "proximate cause exists where there is a complete continuance and unbroken sequence between the act complained of and the act finally resulting in the injury, so that one may be regarded by persons of ordinary judgment as the logical and probable cause." *Scott v. Montgomery County Board of Education*, No. 96-2455, 1997 WL 457521, *5 (4th Cir. Aug.12, 1997) (per curiam). Additionally, a plaintiff may recover for the worsening of an existing condition. *Harris v. Jones*, 281 Md. 560, 570 n.2 (1977) ("The fact that [Plaintiff] may have had some pre-existing susceptibility to emotional distress does not necessarily preclude liability if it can be shown that the conduct intensified the pre-existing condition of psychological stress."). Further, emotional distress, including symptoms of "anxiety, sleeplessness, nervousness, and frustration" may be proximately caused by a violation of the MCDCA. *Puryear v. Capital One Bank, N.A.*, No. CIV.A. RDB-12-3222, 2014 WL 103506, *4 (D. Md. Jan. 10, 2014).

In his MCDCA claim, Plaintiff requests damages for: (1) the harm to his credit score; and (2) the emotional distress and mental anguish suffered as a result of the alleged MCDCA

violation.[10] Pl.'s First Am. Compl., ¶ 215. Specifically, Mr. Peckey alleges that the false delinquencies reported to the credit bureaus in February 2013 caused his credit rating to suffer. *Id.* at ¶ 209-213. While Plaintiff ultimately bears the burden of proving that SLS's false reporting to the credit bureaus was the proximate cause of his reduced credit score (and harm suffered therefrom), it is certainly plausible under *Twombly* and *Iqbal* that the false reporting of delinquencies harmed Mr. Peckey's credit score and adversely affected his ability to obtain credit, goods, and services.

Mr. Peckey also seeks damages for the emotional distress and mental anguish suffered as a result of the alleged MCDCA violation. In particular, Mr. Peckey claims that he "suffered from mental anguish, which manifested physically through hair loss, migraines, and sleep loss," and "suffers from depression, and extreme anxiety." Pl.'s First Am. Compl., ¶ 80, 215. While Plaintiff again bears the burden of proving that SLS's false reporting proximately caused these symptoms, it is plausible that SLS's efforts to collect the debt from Mr. Peckey caused him stress and anxiety.

In light of these facts, Plaintiff has pled damages sufficient to defeat SLS's Motion to Dismiss. As a result, SLS's Motion is DENIED with respect to Count eight.

III. **Count Nine – Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law, § 13-101, *et seq.***

---

[10] Mr. Peckey also seeks to recover attorney's fees and costs. Pl.'s First Am. Compl., ¶ 215. Attorney's fees and costs are expressly available under the FDCPA, 15 U.S.C. § 1692k(a)(3), and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-408(b). As a result, this Court need not determine whether Plaintiff has sufficiently pled this type of damages in his Complaint.

In Count Nine, Plaintiff claims that SLS's alleged violation of the MCDCA constitutes a *per se* violation of the MCPA. Pl.'s First Am. Compl., ¶ 220. SLS argues in response that Plaintiff's MCPA claim should be dismissed because Plaintiff has not sufficiently alleged detrimental reliance on Defendant's false misrepresentations, any resulting injury, or fraud.

Under the MCPA, a violation of the MCDCA constitutes an "unfair or deceptive trade practice." Md. Code Ann., Com. Law § 13-301(14)(iii). The MCPA further provides that, "[a]ny practice prohibited by this title is a violation of this title, whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice." Md. Code Ann., Com. Law § 13-302. As the United States Court of Appeals for the Fourth Circuit recently explained, "[a] violation of the MCDCA is a per se violation of the MCPA." *Olson v. Midland Funding, LLC*, 578 F. App'x 248, 251 (4th Cir. 2014). This Court has routinely held the same. *See, e.g., Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 730 (D. Md. 2013); *Hastings v. Ocwen Loan Servicing, LLC*, 2015 WL 433712, at *3 n. 2 (D. Md. Feb. 2, 2015).

As Plaintiff has sufficiently alleged a violation of the MCDCA, he has also sufficiently pled a violation of the MCPA. Accordingly, Defendant SLS's Motion to Dismiss Count Nine of Plaintiff's First Amended Complaint is DENIED.

## CONCLUSION

For the reasons stated above, Defendant Specialized Loan Servicing LLC's Motion to Dismiss (ECF No. 32) is DENIED.

A separate Order follows.

Dated: April 10, 2015              _____/s/_____
                                   Richard D. Bennett
                                   United States District Judge