# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | | |
|---|---|---|
| **JIM M. PECKEY** | ) | **CIVIL ACTION NO. 1:14-cv-433** |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| **BANK OF AMERICA, N.A.** | ) | |
| | ) | **JURY DEMAND** |
| **And** | ) | |
| | ) | |
| **SPECIALIZED LOAN** | ) | |
| **SERVICING, LLC** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **Additional Parties:** | ) | |
| | ) | |
| **NATIONSTAR MORTGAGE, LLC** | ) | |
| | ) | |
| **Serve Registered Agent** | ) | |
| | ) | |
| **CSC-LAWYERS** | ) | |
| **INCORPORATING SERVICE** | ) | |
| **COMPANY** | ) | |
| **7 ST. PAUL STREET** | ) | |
| **SUITE 820** | ) | |
| **BALTIMORE, MD 21202** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **U.S. BANK NATIONAL** | ) | |
| **ASSOCIATION, AS TRUSTEE** | ) | |
| **FOR GSAA HOME EQUITY** | ) | |
| **TRUST 2006-12** | ) | |
| | ) | |
| **Serve Registered Agent:** | ) | |
| | ) | |
| **THE CORPORATION TRUST** | ) | |
| **INCORPORATED** | ) | |
| **351 WEST CAMDEN STREET** | ) | |
| **BALTIMORE, MD 21201** | ) | |
| | ) | |

**DEFENDANTS.**

<u>**PLAINTIFF'S SECOND AMENDED COMPLAINT AND
REQUEST FOR TRIAL BY JURY**</u>

Plaintiff, Jim M. Peckey, by and through his undersigned counsel, pursuant to Fed. R. Civ. P. 15(a)(2) hereby files this Second Amended Complaint against Defendants, Bank of America ("BANA"), Specialized Loan Servicing, LLC ("SLS"), Nationstar Mortgage, LLC ("Nationstar") and U.S. Bank National as Trustee for GSAA Home Equity Trust 2006-12 ("U.S. Bank") and states in support as follows:

## I.      <u>INTRODUCTION</u>

This lawsuit was initially filed on February 12, 2014, as a result of Bank of America and Specialized Loan Servicing's wrongful and damaging actions against Mr. Peckey.   More specifically, instead of honoring the Deed in Lieu of Foreclose it had entered into with Mr. Peckey, Bank of America transferred the servicing of the mortgage loan to SLS.   Although SLS assured Mr. Peckey that it would honor the DIL once he provided a copy, SLS failed to do so, and instead continued its attempt to collect on the non-existent debt, began foreclosure proceedings, and negatively reported Mr. Peckey to the credit bureaus.

Subsequent to the filing of this lawsuit, SLS completely removed itself from Mr. Peckey's credit reports. Unfortunately, Mr. Peckey recently discovered that the servicing of the mortgage loan was transferred to yet another mortgage servicer, Nationstar Mortgage, LLC ("Nationstar"). Nationstar has since filed an order to docket foreclosure against Mr. Peckey in the Maryland Circuit Court.   Nationstar began negatively reporting Mr. Peckey to the credit bureaus which caused his credit score to plummet, yet again. In other words, two and a half years after successfully completing a Deed in Lieu of Foreclosure with Bank of America, and 14 months after

this lawsuit was filed, Mr. Peckey became aware that U.S. Bank, Bank of America, and/or SLS

transferred the servicing rights to Nationstar causing Plaintiff further real and foreseeable harm.

## II. BRIEF HISTORY

This is an action for actual, statutory, and punitive damages, legal fees and expenses

brought by an individual consumer, Mr. Jim M. Peckey, against Defendant, Bank of America for

Breach of Contract, Negligent Misrepresentation, Gross Negligence, Negligence, Common Law

Fraud, Promissory Estoppel; and for Defendants, Specialized Loan Servicing and Nationstar's

violations of the Fair Debt Collection Practices Act, the Maryland Consumer Debt Collection Act

and the Maryland Consumer Protection Act, and against Defendant U.S. Bank National

Association as Trustee for GSAA Home Equity Trust 2006-12 under the theory of respondeat

superior[1] and Request for Declaratory Relief.

Jim M. Peckey is a hard-working, law abiding American citizen who served in the United

States Navy, from 1998 to 2002 and worked for the White House from 2002 to 2004 providing

information technology support. After years of hard work, Mr. Peckey realized the "American

Dream" when he purchased his first home in 2006. In connection with the purchase, Mr. Peckey

obtained two mortgages on the Property. Bank of America was the holder of the first mortgage

loan and Real Time Resolutions Inc. held the second mortgage on the relevant dates. In addition

to the two mortgages, Mr. Peckey was obligated to pay monthly home owner association fees.

Unfortunately, due to the economic downturn Mr. Peckey suffered a reduction of income

and began having difficulty making his mortgage payments. He attempted to save his home

through various government programs and was ultimately approved to participate in the Home

---

[1] Plaintiff will not know whether U.S. Bank took an active part in SLS' and Nationstar's bad acts by authorizing the servicing to be transferred and authorizing the foreclosure action until after discovery.

Affordable Foreclosure Alternatives ("HAFA") program [2].  In order to participate in HAFA programs, Mr. Peckey was required to settle his second mortgage.  Mr. Peckey was first approved for a short sale by Bank of America.  Despite receiving two offers, Bank of America ultimately failed to approve the short sale. After the short sale failed, Bank of America approved Mr. Peckey for a Deed in Lieu of Foreclosure ("DIL").  Mr. Peckey performed the terms required to complete the Deed in Lieu of Foreclosure.  Specifically, Mr. Peckey signed and returned all of the required documents; he vacated the Property prior to the required move-out date, and returned the keys to BANA. Pursuant to the terms of the DIL, BANA sent Mr. Peckey a Three-Thousand dollar ($3,000.00) relocation check and updated his file with all three credit bureaus that he successfully completed a deed in lieu of foreclosure.  Lastly, BANA provided Mr. Peckey and the Internal Revenue Service with a 1099-C.

Although losing his home was not the result Mr. Peckey hoped for, he was relieved to have successfully completed the HAFA program so he could move on and rebuild his life. Unfortunately, his relief was short lived because BANA failed to abide by the all of terms of the DIL, which stated, in pertinent part, that following the completion of the deed in lieu of foreclosure, the debt would: 1) be settled in full, 2) BANA would waive its right to pursue collection of any deficiency, and 3) BANA would record a lien release in full satisfaction of the mortgage.  Instead, BANA, on behalf of U.S. Bank, wrongfully transferred the servicing rights for the mortgage loan to SLS on or about October 12, 2012.  SLS began its attempt to collect mortgage payments from Mr. Peckey on or about November 1, 2012.  As previously mentioned, Mr. Peckey recently found out that the servicing of the loan subject to this suit was transferred by

---

[2]  HAFA is a governmentally funded program that provides opportunities for borrowers to transition to more affordable housing through a "short sale" or "deed-in-lieu of foreclosure" when they can no longer afford to stay in their home but want to avoid foreclosure.

SLS to Nationstar on or about April 1, 2014 and Nationstar subsequently began foreclosure proceedings against Mr. Peckey.

## III.  JURSIDICTION AND VENUE

1.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.  This Court has jurisdiction pursuant to 28 U.S.C. §1332 and the FDCP, 15 U.S.C. § 1692k(d).

3.  Jurisdiction lies within the District of Maryland because Defendants Bank of America, Nationstar, Specialized Servicing and U.S. Bank National a/k/a U.S. Bank National Association as Trustee for GSAA Home Equity Trust 2006-12 have minimum contacts with Maryland and otherwise intentionally availed themselves of the Maryland markets, so as to render the exercise of jurisdiction by Maryland courts permissible under traditional notions of fair play and substantial justice.

4.  This Court has jurisdiction over the state law claims because they are so related to the federal claims that they form part of the same case or controversy under Article III, Section 2 of the United States Constitution.

## IV. PARTIES

5.  Plaintiff Jim M. Peckey, ("Plaintiff" or "Peckey") is a resident of the State of Oregon and is the record owner of the real property located at 7 Alexander Court, Owings Mills, MD 21117.

6.  Defendant Bank of America, N.A. ("BANA") is, and at all times herein mentioned was, a Delaware Corporation that maintains its principal place of business at Bank of America Center, 100 North Tryon Street, Charlotte, North Carolina 28255 and regularly conducts business in the State of Maryland.

7. Defendant Specialized Loan Servicing, LLC ("SLS") is, and at all times herein mentioned was, a Delaware limited liability company that maintains its principal place of business in in Highland Ranch, CO, and regularly conducts business in the State of Maryland.

8. Defendant SLS is a business that collects debts for residential mortgage loans.

9. SLS regularly agrees to collect home loan debts that are in default when it begins collecting mortgage payments.

10. SLS regularly demands payment from consumers of claimed arrearages and provides consumers with reinstatement quotes and itemizations of the amount that it is attempting to collect.

11. SLS regularly collects or attempts to collect debts owed or due or asserted to be owed or due.

12. Defendant U.S. Bank National a/k/a U.S. Bank National Association as Trustee for GSAA Home Equity Trust 2006-12 is a national banking association doing business in Maryland with its principal place of business located at 800 Nicollet Mall, BC-MN-H210, Minneapolis, MN 55402.

13. It is upon information and belief that U.S. Bank is the owner of the purported security interest for the property subject to this action and that at all times authorized the servicers to act on its behalf.

14. Defendant Nationstar Mortgage, LLC is a business that collects debts for residential mortgage loans.

15. Nationstar regularly agrees to collect home loan debts that are in default when it begins collecting mortgage payments.

16. Nationstar regularly demands payments from consumers of claimed arrearages and provides consumer with reinstatement quotes and itemizations of the amount that it is attempting to collect.

17. At all relevant times, Defendant Nationstar was and is servicing the alleged mortgage loan on behalf of U.S. Bank.

## V. STATEMENT OF FACTS

18. On April 27, 2006, Mr. Peckey purchased the Property located at 7 Alexander Court, Owings Mills, MD 21117 (the "Property").

19. U.S Bank currently owns the loan and holds the alleged note on the Property subject to this lawsuit.

20. At all times relevant, Defendants BANA, SLS, and Nationstar were at one time servicing the mortgage for the Property subject to this lawsuit.

21. The servicers' violations occurred within the scope of their employment under the express or implied authorization of U.S Bank.

22. Accordingly, U.S. Bank National is liable for the servicers' bad acts under a theory of respondeat superior and is jointly and severally liable for the bad acts committed against Mr. Peckey.

23. Mr. Peckey remains the legal record owner for the Property. The MD Department of Assessments & Taxation Report is attached as **Exhibit 1**.

24. As stated above, Mr. Peckey had two mortgages on his home. The first mortgage was with BANA and the second mortgage was being serviced by Real Time Resolutions ("Real Time").

25.   Mr. Peckey was also required to pay a home owner association fee of approximately $35 per month.

26.   Mr. Peckey began having difficulty making his mortgage payments due to a reduction of income.

27.   In an effort to remain in his home, avoid foreclosure and avoid having to file for personal bankruptcy, Mr. Peckey contacted Bank of America and requested assistance.

28.   BANA informed Plaintiff that he was eligible for various government funded programs.

29.   Mr. Peckey first requested financial relief in the form of lowered interest rates, lowered monthly payments, or a lowered principal balance through a Home Affordable Modification Program ("HAMP").

30.   Ultimately, in its efforts to "help" Mr. Peckey keep his home, BANA increased Plaintiff's monthly mortgage payment by over $500.00 per month which he could not afford.

31.   BANA then informed Peckey that he was eligible to participate in the federal government Home Affordable Foreclosure Alternatives Program ("HAFA") short sale program. BANA's letter dated 3/29/11 is attached as **Exhibit 2**.

### *HAFA Programs*

32.   HAFA provides two options for transitioning out of a mortgage: a short sale or a Deed in Lieu of foreclosure.

33.   The HAFA program provides options to avoid costly foreclosures and offers incentives to borrowers, servicers and investors who utilize a short sale or DIL to avoid foreclosures.

34.   In a short sale, the servicer allows the borrower to list and sell the mortgaged property with the understanding that the net proceeds from the sale may be less than the total amount due on the first mortgage.

35.   If the borrower makes a good faith effort to sell the property but is not successful, a servicer may consider a deed in lieu of foreclosure.

36.   With a DIL, the borrower voluntarily transfers ownership of the property to the servicer, provided the title is free and clear of mortgages, liens and encumbrances.

37.   With either the HAFA short sale or DIL, the servicer may not require a cash contribution or promissory note from the borrower and must forfeit the ability to pursue a deficiency judgment against the borrower.

38.   Based on BANA's representation that he was eligible to participate in HAFA programs, Peckey used his savings to improve the property and increase the potential sale price by purchasing a new air conditioner.  The receipt for the air conditioner is attached as **Exhibit 3**.

39.   Per HAFA regulations, BANA informed Mr. Peckey that he would need to settle all outstanding liens secured by the property.

40.   To that end, Peckey contacted Real Time and negotiated a settlement of $25,000.00 to release its lien on the Property.  The settlement letter is attached as **Exhibit 4**.

41.   Real Time released its lien on the Property once it received the funds and filed the release with Maryland land records.  The Release is attached as **Exhibit 5**.

42.   Mr. Peckey received two separate offers to purchase the Property however, BANA refused to approve either offer.

43.   Mr. Peckey next inquired about the possibility of a HAFA DIL.

44. In a letter dated June 29, 2012, BANA informed Plaintiff that he was eligible for a Deed in Lieu through HAFA and instructed that he sign and fax various documents, which he did, to BANA's attention. Attached as **Exhibits 6a through 6g** are: (**6a**) BANA's letter dated 06/29/12; (**6b**) the "Deed in Lieu of Foreclosure Approval Terms and Conditions;" (**6c**) the "Assignment of Unearned Insurance Premium Refund;" **6(d)** the "Surrender of Possessions Agreement;" **6(e)** the "Move Out Agreement," the (**6f**) "Personal Property Release," and (**6g**) the W-9 form.

45. The "Important terms of this Deed in Lieu offer" included in the June 29th letter state in pertinent part:

- The owner of your mortgage note, the mortgage insurer, if your loan is covered by mortgage insurance, and Bank of America, N.A. waive their right to pursue collection of any Deficiency following the completion of your deed in lieu of foreclosure and your debt is considered settled. . .

- The amount of the Deficiency will be reported to the Internal Revenue Service (IRS) on the appropriate 1099 Form or Forms. . .

- We will record a lien release in full satisfaction of the mortgage upon transfer of title of the Property by the signed transfer of title document if all of the terms and conditions of this Agreement are met.

- Bank of America, N.A. will report the debt to the credit reporting agencies as "deed received in lieu of foreclosure on a defaulted mortgage"….

46. Moreover, the "DIL of Foreclosure Approval Terms and Conditions" state in pertinent part:

"… if you meet all of your responsibilities under the Deed in Lieu of Foreclosure Agreement, you may receive relocation assistance of up to $3,000.00…" See "Approval Terms and Conditions" **Ex. 6b** page 2 ¶ 12.

47. Once BANA received the above listed documents, BWW Law Group ("BWW"), BANA's attorneys, sent Peckey a letter dated September 13, 2012, with the "Deed in Lieu of Foreclosure" contract and the "Agreement for Transfer of Property in Lieu of Foreclosure." BWW's letter, the DIL contract, and Agreement are attached as **Exhibits 7, 8 & 9** respectively.

48. The "Deed in Lieu of foreclosure" states in pertinent part:

> The parties hereto agree that this Deed is delivered in lieu of foreclosure, and that the consideration for this Deed is the release of the Grantor's personal obligation to repay the balance due under the note secured by that Deed of Trust in the amount of $238,188.56, which sum, together with accrued interest and all other allowable charges, continues to be secured by a deed of trust on the Property.

49. Mr. Peckey executed the required documents, vacated his home prior to July 13, 2012, and mailed the keys to the Property using the UPS envelope provided by BWW.

50. Shortly thereafter, BANA took physical possession of the Property by changing the locks on the doors.

51. Mr. Peckey received the $3,000.00 relocation check on or about October 10, 2012, from BANA. A copy of the relocation check is attached as **Exhibit 10**.

52. BANA provided Mr. Peckey and the Internal Revenue Service with a 1099-C form. A copy of the 1099-C form is attached as **Exhibit 11**.

53. BANA reported the mortgage loan to the credit bureaus as: "deed received in lieu of foreclosure."[3]

54. Inexplicably, two days after issuing Peckey's relocation check, BANA sent Peckey a letter dated October 12, 2012, informing him that the servicing of his mortgage loan was being

---

[3] Since the filing of this lawsuit, BANA changed the way it was reporting the mortgage loan from "deed received in lieu of foreclosure" to "Account Transferred to Another Office Account Information Disputed by Consumer Last Paid: 12/2010."

transferred to Specialized Loan Servicing, beginning November 1, 2012. The transfer letter is attached as **Exhibit 12**.

55.  It is upon information and belief that given the proximity of the dates, BANA was transferring the servicing of the loan to SLS at the time it was completing the DIL process.

56.  Mr. Peckey contacted BANA several times in an attempt to resolve the confusion but was told by BANA representatives and managers that BANA could not communicate with him because it had transferred the loan to SLS.

57.  Mr. Peckey received his first of many collection phone calls from SLS on November 8, 2012, at 11:44 am.

58.  The representative informed Mr. Peckey that SLS was the new servicer and advised him that his account was delinquent.

59.  Strangely, Mr. Peckey received a letter dated November 9, 2012[4], from BANA. The letter informed him that "at this time," BANA was not able to offer a HAFA DIL Foreclosure. The denial letter is attached as **Exhibit 13**.

60.  The November 9, 2012 letter also stated: "you are not eligible for HAFA Deed in Lieu of Foreclosure at this time because your loan does not meet the requirements required by the investor, or owner of your loan, and/or mortgage company." *See* Id.

61.  BANA's November 9, 2012, letter failed to address that BANA had: (1) approved the DIL in a letter dated June 29, 2012, (2) already taken possession of the Property, (3) changed the locks, (4) paid Mr. Peckey a $3,000.00 relocation check, (5) provided Mr. Peckey and the Internal Revenue Service with a 1099-C, and (6) Notified the credit bureaus of the DIL.

---

[4] 9 days **after** BANA stopped "servicing" the mortgage loan.

BANA did everything it was obligated to do under the terms of the DIL, except, it failed to record the lien release in full satisfaction of the mortgage and it failed to cause the DIL to be recorded in the Maryland land records.

62. In a "Welcome Letter" dated November 9, 2012, SLS informed Mr. Peckey that it was his new servicer. The letter is attached as **Exhibit 14**.

63. Mr. Peckey received harassing telephone calls from Specialized Loan Servicing on his personal cell phone as well as on his work telephone number.

64. In a letter dated November 11, 2012, SLS claimed that Mr. Peckey had a total balance due of $287,095.97. The letter is attached as **Exhibit 15**.

65. Mr. Peckey received a Mortgage Statement from SLS dated November 12, 2012, stating that the "current payment" due was $1,713.63, the "Past Due Payments" totaled $44,089.16, the "Outstanding Late Charges/Fees" totaled $8,901.65, and the "total amount due" was $55,190.29. 11/12/12 Mortgage Statement is attached as **Exhibit 16**.

66. Mr. Peckey called and spoke with a representative from SLS named Mario on November 12, 2012, and advised Mario that he had successfully completed a HAFA Deed in Lieu of Foreclosure with Bank of America, no longer had possession of the Property, and had been released from all obligations regarding the mortgage loan.

67. Mario requested that Peckey fax the DIL documents and assured him that SLS would honor any prior agreement that had been made with BANA.

68. Mr. Peckey faxed SLS a copy of the HAFA Deed in Lieu along with a cease and desist letter to Mario's attention. The fax cover page is attached as **Exhibit 17**.

69.  SLS acknowledge receipt of fax by way of a letter dated November 12, 2012, advising Mr. Peckey that his work and home numbers had been removed from its records. The letter dated 11/12/12 is attached as **Exhibit 18.**

70.  Mr. Peckey attempted to follow-up with Mario by leaving several voicemail messages, but never received a response and SLS' attempts to collect on the mortgage loan continued.

71.  Instead of addressing Mr. Peckey's fax, SLS sent a letter dated November 16, 2012, advising Peckey that the servicing of his mortgage loan was recently transferred to SLS, that the unpaid principal balance was $238,188.56 and that his escrow balance was negative $5,802.16. The letter is attached as **Exhibit 19**.

72.  SLS next sent Plaintiff a "Notice of Default and Intent to Foreclose" on or about December 16, 2012. The Notice of Default and Intent to Foreclose are attached as **Exhibit 20**.

73.  The "Notice of Default" stated that Plaintiff's mortgage loan was in default as a result of his failure to make the February 1, 2011, payment, and the payments due each month thereafter. The letter further stated that Plaintiff had to remit $60,992.45, in order to cure the arrears.

74.  Mr. Peckey received a mortgage statement from SLS dated December 18, 2012, stating that the "current payment" due was $1,713.63, the "Past Due Payments" totaled $46,288.64, the "Outstanding Late Charges/Fees" totaled $9,144.65, and the "total amount due" was $57,632.77. The December 18, 2012 Mortgage Statement is attached as **Exhibit 21**.

75.  Mr. Peckey contacted SLS and spoke to Anthony, an SLS manager who was assigned as his point of contact.

76.  Anthony claimed that SLS never received his November 12, 2012 fax and requested Mr. Peckey resend the DIL documents via email.

77.  It is upon information and belief that Anthony lied about SLS not receiving the fax because in a letter dated November 12, 2012, SLS referred to Mr. Peckey's fax, specifically addressing his "cease and desist" request. *See* SLS' letter previously attached as **Ex. 18**.

78.  Mr. Peckey sent SLS an email dated December 20, 2012, at 12:54 pm to crdocs@sls.net and attached his November 12, 2012 letter advising SLS that he successfully participated in a HAFA Deed in Lieu of Foreclosure with BANA and no longer owed the debt SLS was attempting to collect.  Peckey also reiterated that SLS had acknowledge receipt of his November 12, 2012 letter.  A copy of the email is attached as **Exhibit 22**.

79.  Despite his efforts to follow-up with Anthony, Mr. Peckey never received a response.

80.  Instead, Plaintiff received another Mortgage Statement from SLS dated January 18, 2013, which stated that the "current payment" due was $1,713.63, the "Past Due Payments" totaled $48,488.12, the "Outstanding Late Charges/Fees" totaled $9,144.65 and that the "total amount due" was $59,832.25.  The January 18, 2013 Mortgage Statement is attached as **Exhibit 23**.

81.  Mr. Peckey received a Mortgage Statement from SLS dated February 18, 2013, which stated that the "current payment" due was $1,713.63, the "Past Due Payments" totaled $50,687.60, the "Outstanding Late Charges/Fees" totaled $9,144.65, and the "total amount due" was $62,031.73.  The February 18, 2013 Mortgage Statement is attached as **Exhibit 24**.

82.  In a letter dated March 4, 2013, SLS requested Mr. Peckey pay $1,901.00 for Hazard insurance. The letter is attached as **Exhibit 25**.

83.  Mr. Peckey received a Mortgage Statement from SLS dated May 20, 2013, which stated that the "current payment" due was $1,713.63, the "Past Due Payments" totaled

$57,286.04, the "Outstanding Late Charges/Fees" totaled $3,926.63, and that the "total amount due" was $63,412.21. The May 20, 2013 Mortgage Statement is attached as **Exhibit 26**.

84. On or about June 21, 2013, SLS sent Mr. Peckey an "Escrow Account Disclosure Statement" stating that he owed $763.26. The Disclosure is attached at **Exhibit 27**.

85. Mr. Peckey received a Mortgage Statement from SLS dated July 18, 2013, which stated that the "current payment" due was $1,713.63, the "Past Due Payments" totaled $61,685.00, the "Outstanding Late Charges/Fees" totaled $4,438.69, and that the "total amount due" was $68,323.17. The July 18, 2013 Mortgage Statement is attached as **Exhibit 28**.

86. Until the initial filing of this case, SLS was still attempting to collect on the mortgage loan.

87. Since the filing of this lawsuit, SLS has removed the trade line and stopped negatively reporting Mr. Peckey to the three credit bureaus.

88. Defendant Nationstar is reporting that Mr. Peckey defaulted on his mortgage loan to the three credit bureaus. See Credit Report dated April 15, 2015 attached as **Exhibit 32.**

89. Nationstar failed to send Mr. Peckey a "transfer of servicer" letter to his current address, or any of his previous addresses for that matter.

90. Instead, Plaintiff recently discovered through a Qualified Written Request, that Nationstar sent Mr. Peckey the "transfer of servicer" letter to Defendant SLS' corporate headquarters.[5] "Transfer of Service" letter dated 4/14/14 with wrong address is attached as **Exhibit 33.**

---

[5] In response to a qualified written request, Nationstar produced a copy of a "transfer letter" dated April 14, 2014 purportedly sent to Plaintiff. Although the letter is addressed to Mr. Peckey, Nationstar mailed the letter to 8742 Lucent Blvd. Ste. 300, Hghlnds [sic] Ranch, CO 80129-2386, which is the address for Specialized Loan Servicing's corporate offices.

91.     Therefore, Mr. Peckey was not provided an opportunity to alert Nationstar of its mistake and prevent the additional damage to his credit.

92.     To date, BANA has failed to file a lien release in full satisfaction of the mortgage.

93.     To date, BANA has failed to record the DIL with Maryland Land Records.

94.     On or about April 10, 2015, Plaintiff received an order to docket foreclosure sale and discovered that a foreclosure case had been filed against him in the Circuit Court for Baltimore County, Maryland by Nationstar Mortgage. *See* Foreclosure case 03C15002496.

95.     As mentioned above, Plaintiff did not receive a "transfer of servicer" letter from either SLS or Nationstar in violation of 12 U.S. Code § 2605.

96.     Consequently, Mr. Peckey did not become aware of the wrongful transfer from SLS to Nationstar until 14 months after this lawsuit was filed.

97.     Once Plaintiff received the foreclosure notice he checked his credit report and discovered that Nationstar reported the foreclosure action to the credit bureaus further damaging his credit.

98.     Plaintiff, thought counsel, contacted Nationstar Mortgage, LLC and requested that it stop the wrongful foreclosure action, remove the trade line and correct the reporting to the credit bureaus.

99.     Nationstar refused both of Plaintiff's requests forcing him to add Nationstar as a Defendant.

100.    Plaintiff is forced to add the Trust to prevent it from continuing to transfer the servicing of this loan in the future.

### .*SUMMARY OF DAMAGES AND INJURIES SUFFERED BY PLAINTIFF*

101. Defendants' wrongful actions and practices alleged herein caused Plaintiff damages, injuries, and losses of money in the following respects, among others:

  a. As a direct and proximate result of BANA, SLS', U.S. Bank and Nationstar's ("Defendants") conduct, Plaintiff suffered from mental anguish, which manifested physically through hair loss, migraines, and sleep loss.

  b. As a direct and proximate result of the Defendants' actions, Plaintiff suffers from depression, and extreme anxiety.

  c. As a further direct and proximate result of the Defendants' actions, Plaintiff has suffered overall degradation in quality of life because he has been unable to make firm financial plans as he technically remains the record owner of the Property.

  d. As a further direct and proximate result of Defendants' actions, Plaintiff has suffered overall degradation in quality of life as he has been unable to save for his future, knowing that SLS and/or Nationstar is pursuing him for an enormous amount of money and he needs to pay for his legal defense.

  e. Without limiting the damages as described elsewhere in this Complaint, Plaintiff's damages arising from this cause of action also include costs and expenses related to protecting himself by initiating this lawsuit, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, punitive damages as authorized.

  f. Mr. Peckey purchased an air conditioning unit, for a home he was leaving, based solely on BANA's representation that his loan qualified for HAFA programs.

  g. Mr. Peckey settled his second mortgage with Real Time based solely on BANA's representation that his loan qualified for HAFA programs.

  h. Mr. Peckey is facing liability for HOA fees since he is still the record owner of the Property.

i. As a result of the Defendants actions, Mr. Peckey's credit worthiness was extremely damaged.

# VI.   CLAIMS FOR RELIEF

### COUNT ONE
### BREACH OF CONTRACT AGAINST BANK OF AMERICA

102.  Plaintiff restates and incorporates herein by reference the allegations in all preceding paragraphs, inclusive, as though fully set forth.

***Facts Meeting the Requirements Needed to Support BANA's Breach of Contract***

103.  BANA was Mr. Peckey's servicer at all relevant time and the parties had a valid contract by virtue of the original mortgage loan and the Deed in Lieu of foreclosure.

***Offer***

104.  BANA offered Peckey a DIL on or about June 29, 2012.

105.  The DIL stated that if Plaintiff transferred the deed to the Property to BANA, he would be relieved from any and all financial obligations under the terms of the mortgage loan.

***Acceptance***

106.  Mr. Peckey accepted the terms of BANA's DIL by performance described in paragraphs 38 through 40 and paragraphs 44 & 49.

107.  BANA accepted the DIL by its actions more fully described in paragraphs 39 through 42.

## *Consideration*

108. BANA and Peckey agreed that Peckey would deliver the Deed in lieu of foreclosure, and that the consideration for the DIL was the release of his personal obligation to repay the balance due under the note secured by the Deed of Trust in the amount of $238,188.56.

## *Performance*

109. As alleged in paragraphs 38 through 40 and paragraphs 44 & 49, the terms of the contract were fully executed by Mr. Peckey.

110. As further evidence of a valid DIL, BANA adhered to certain portions of the contract. It notified the three credit bureaus of the deed in lieu of foreclosure, it sent Mr. Peckey a $3,000.00 relocation check, and it sent Mr. Peckey a 1099-C form.

111. Unfortunately, BANA failed to comply with substantial and material portions of the DIL.

112. Pursuant to the DIL, BANA owed Mr. Peckey a contractual obligation to "record a lien release in full satisfaction of the mortgage upon transfer of title of the Property by the signed transfer of title document once all of the terms and conditions were met."

113. BANA breached that obligation by failing to record a lien release in the land records in full satisfaction of the mortgage debt once Mr. Peckey complied with the terms and conditions of the contract.

114. Pursuant to the terms of the DIL, BANA owed Mr. Peckey a contractual obligation to record the Deed in Lieu of foreclosure once it received all of the required documents and confirmed that Peckey complied with the terms of the agreement.

115. BANA breached that obligation by failing to record the Deed in Lieu of foreclosure once Peckey complied with the terms and conditions of the contract.

116. Pursuant to the terms of the HAFA agreement, BANA owed Plaintiff a contractual obligation to release Mr. Peckey from any deficiency.

117. BANA breached that contractual obligation releasing Plaintiff from any deficiency by transferring the mortgage loan to SLS which is attempting to collect the full balance of the mortgage loan.

118. As a direct and proximate result of BANA's breach of contract, Plaintiff suffered stress, frustration and was denied the benefit of what he thought would be the end of his mortgage and real estate related obligations. Plaintiff is entitled to an award of damages against Defendant BANA for its Breach of Contract.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff against Defendant for actual damage not less than $500,000.00, costs and attorney's fees incurred by Plaintiff, and grant Plaintiff such other and further relief as this court finds necessary and property.

## COUNT TWO
## NEGLIGENT MISREPRESENTATION AGAINST BANK OF AMERICA

119. Plaintiff restates and incorporates herein by reference the allegations in all preceding paragraphs, inclusive, as though fully set forth.

120. Mr. Peckey was forced to rely on BANA's "expertise in servicing loans and at helping homeowners in distress" when making decisions regarding the Property.

***Facts to Support BANA's Negligent Misrepresentation***

(a) **Duty of Care**

121. Defendant BANA owed a "duty of care" to Plaintiff, by virtue of his existing contractual relationship based upon the original mortgage, the HAFA short-sale approval letter, and the DIL.

122.    Defendant BANA owed Plaintiff a "professional duty of care" to provide truthful information to Plaintiff as to his loss mitigation options because BANA was in the position to know which loss mitigation programs Mr. Peckey was qualified to participate in.

123.    BANA had a duty to exercise a "reasonable degree of skill and diligence" while servicing Plaintiff's mortgage loan and while advising him on his loss mitigation options.

124.    Defendant BANA owed a duty to use "reasonable care in its professional capacity as a loan servicer" to research the type of loss mitigation options Plaintiff's mortgage loan qualified for by using a reasonable degree of skill and diligence and provide Plaintiff with accurate information.

### (b) BANA's Breach of Its Duty of Care

125.    Mr. Peckey requested assistance when he began having difficulty making his mortgage loan payments.

126.    BANA responded by informing Mr. Peckey that he was eligible for various government programs such as HAMP and HAFA.

127.    BANA breached its duty of care by misrepresenting in its June 29, 2012, letter that Plaintiff had been approved to participate in the HAFA DIL program.

128.    BANA breached its duty of care by negligently misrepresenting in its November 9, 2012 letter, that Plaintiff was not eligible for a HAFA Deed in Lieu.

129.    BANA breached its duty of care by failing to ascertain whether Plaintiff's loan was eligible for HAFA prior to informing him that he was approved.

130.    BANA breached its duty by not providing Mr. Peckey with accurate information that only BANA was able to provide.

### (c) Intending Plaintiff to Rely on its False Statements

131. Plaintiff contacted BANA and requested help saving his home and help mitigating his damages.

132. BANA intended Mr. Peckey to rely on its representation that he qualified for the DIL. It provided Plaintiff with correspondence stating that "as your mortgage servicer, we want to help you avoid foreclosure" (*See* 3/29/12 letter previously attached as **Ex. 2**) and provided all of the documents that he needed to execute, and paid him the move out money.

133. BANA clearly intended to have plaintiff believe that he was eligible for the DIL so that he would vacate his property and forego other loss mitigation options.

134. After the DIL was executed, BANA intended Plaintiff to believe that his loan was not eligible to participate in the HAFA DIL program and that he still had an obligation to pay SLS under the terms of the original mortgage.

### (d) Knowledge of Plaintiff's reliance

135. BANA knew or should have known that Mr. Peckey would rely on its representation that his mortgage loan was eligible for HAFA Programs when deciding what actions to take regarding the Property.

### (e) Justifiable Reliance

136. Mr. Peckey, an average consumer, did justifiably rely to his detriment on BANA's misrepresentations.

137. BANA sent Plaintiff letters stating that it wanted to help him avoid foreclosure and Plaintiff relied on BANA's representation that he was eligible for a DIL when he made the difficult decision to surrender his Property.

138.    Based on BANA's representation that Mr. Peckey was qualified to participate in the HAFA programs, Mr. Peckey purchased an air conditioning unit, settled his second mortgage with Real Time and voluntarily surrendered the Property to BANA.

**(f) Causation and Damages**

139.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff suffered the damages outlined in paragraph 101, a through I.

140.    Mr. Peckey paid $25,000.00 to Real Time to settle his second mortgage solely based on BANA's representation that he qualified for the HAFA programs.

141.    Based on BANA's representation that he qualified for HAFA programs, Mr. Peckey purchased a new air conditioning unit for a property he was vacating.

142.    Mr. Peckey executed the DIL documents, complied with the terms and conditions of the DIL in reliance that he would be released from any liability associated with the mortgage loan, but instead was forced to file this lawsuit.

    **WHEREFORE**, Plaintiff prays that the Court: Award Plaintiff compensatory damages in an amount to be determined by the jury; award punitive damages to be determined by the jury; award pre-judgment interest; award Plaintiff reasonable costs and attorney's fees and; award Plaintiff such other and further relief as the Court may deem just and proper.

## COUNT THREE
## GROSS NEGLIGENCE AGAINST BANK OF AMERICA

143. Plaintiff restates and incorporates by reference the allegations in all preceding paragraphs, inclusive, as though fully set forth herein.

*Facts to Support BANA's Gross Negligence*

**(a) Duty of Care**

144. Bank of America and Mr. Peckey had "contractual privity" by virtue of the original Mortgage Note, the HAFA short sale contract and the DIL.

145. As the loan servicer, Defendant BANA owed Plaintiff a duty to provide truthful and information as to his loss mitigation options.

146. Defendant BANA owed a duty to Plaintiff to use "reasonable care" in its professional capacity as a loan servicer, to provide accurate information as to whether or not Mr. Peckey's mortgage loan was eligible to participate in HAFA programs prior to advising him that he was approved for said programs.

147. At all times relevant herein, Defendant BANA was acting as Plaintiff's lender and loan servicer, had a duty to exercise "reasonable care and skill" to maintain proper and accurate loan records and attendant to the maintenance, accounting and servicing of loan records, including, but not limited to accurately recording the Deed in Lieu of Foreclosure with Maryland Land Records.

148. At all times relevant herein, Defendant BANA was acting as Plaintiff's lender and loan servicer, had a duty to exercise "reasonable care and skill" to maintain proper and accurate loan records and attend to the maintenance, accounting and servicing of loan records, including, but not limited to refrain from transferring the mortgage loan to SLS once the DIL had been executed.

**(b) BANA's Breach of Duty**

149. Peckey requested assistance mitigating his losses and was told by BANA that he qualified for HAFA programs.

150.     BANA breached its duty of care by not providing truthful or accurate information when asserting, in its June 29, 2012 letter, that Plaintiff was approved to participate in the HAFA DIL program.

151.     BANA breached its duty of care by not providing truthful or accurate information when asserting, in its November 9, 2012 letter, that Plaintiff was not eligible for a HAFA Deed in Lieu.

152.     BANA breached its duty of care by making false representations that the loan would be considered settled and the deficiency forgiven if Mr. Peckey "complied with the terms of the deed-in-lieu."

153.     BANA breached its duty of care by failing to keep proper and accurate loan records because presumably, BANA would not have acted in a contradictory manner by reporting the DIL to the credit bureaus while concurrently transferring the servicing of the loan to SLS had it kept proper and accurate loan records.

154.     BANA breached its duty of care by failing to release the lien and record the deed with Maryland land records.

**(c)  Conscious Disregard to Use Reasonable Care**

155. Defendant BANA's conduct described herein constitutes willful and wanton disregard for the rights of the Plaintiff.

156. In its capacity as a loan servicer, BANA sent Plaintiff correspondence advising him that it wanted to aid Mr. Peckey in saving his home or help him mitigate his losses.

157. It was foreseeable that based on BANA's representation offering assistance, Plaintiff would trust and rely on BANA's advice, suggestions and offers.

158.  BANA knew or should have known the importance of providing Mr. Peckey with accurate information, after-all; a home is arguably one of the biggest purchases a person will make in his or her lifetime.

159.  Based on BANA's conduct, it is clear that it disregarded using reasonable care by failing to ascertain whether Mr. Peckey's loan was eligible to participate in HAFA.

160.  BANA initially sent Mr. Peckey a letter approving Plaintiff's request to participate in the HAFA Program, then, once he complied with the terms and conditions required under the DIL, BANA sent a letter stating that he was not eligible to participate in the HAFA program because his loan did not qualify.

161.  If BANA managed its account properly, it would not have transferred the servicing of Plaintiff's loan to SLS while simultaneously managing and approving the DIL process.

### (d) *Causal Relationship between the Breach and the Harm*

162.  Mr. Peckey relied on BANA's representation that if he complied with the terms of the DIL, he would be released from his obligations under the terms of the mortgage.

163.  Mr. Peckey surrendered the first home he worked so hard to purchase based on BANA's representation that he would no longer be obligated to perform under the terms of the original mortgage loan if he surrendered the deed and that any deficiency would be forgiven.

164.  If BANA correctly performed its duty as a servicer, it would not have offered loss mitigation options in which Plaintiff was not eligible to participate.

165.  If BANA's records were accurate it would not have wrongfully transferred the servicing rights of the mortgage loan to SLS.

166.  If BANA's records were accurate it would not have sent Mr. Peckey the November 9, 2012 denial letter after it paid him the $3,000.00 relocation check; reported the deed in lieu to the credit bureau; and provided Mr. Peckey and the Internal Revenue Service with a 1099-C.

*(e) **Damages as a Proximate Result of BANA's Negligence***

167.  Based on said reliance, Mr. Peckey paid $25,000.00 to Real Time to pay-off his second mortgage, which he would not have done if BANA informed him that he was not eligible to participate in HAFA programs.

168.  Based on said reliance, Mr. Peckey paid $3,298.00 to purchase a new air conditioner, which he would not have done if BANA informed him that he was not eligible to participate in HAFA programs.

169.  Based on said reliance, Mr. Peckey surrendered the property to BANA and forwent other loss mitigation options.

170.  As a direct and proximate result of BANA's conscious and voluntary disregard of the use of reasonable care, negligence and carelessness, as set forth above, Plaintiff suffered actual, general and special damages in an amount to be determined at trial.

171.  Plaintiff also suffered physical injury as a proximate result of BANA's negligence which manifested itself through depression, back and neck pain, headache and stomach aches.

WHEREFORE, Plaintiff prays that the Court: Award Plaintiff compensatory damages in an amount to be determined by the jury; award punitive damages to be determined by the jury; award pre-judgment interest; award Plaintiff reasonable costs and attorney's fees; and, award Plaintiff such other and further relief as the Court may deem just and proper.

## COUNT FOUR
## NEGLIGENCE AGAINST BANK OF AMERICA

172.    Plaintiff restates and incorporates by reference the allegations in all preceding paragraphs, inclusive, as though set forth herein.

*Facts to Support BANA's Negligence*

**(a) Duty of Care**

173.   Bank of America and Mr. Peckey had "contractual privity" by virtue of the original Mortgage Note, the short sale contract and the DIL.

174.    As the loan servicer, Defendant BANA owed Plaintiff a duty to provide truthful information regarding his loss mitigation options.

175.    Defendant BANA owed a duty to Plaintiff to use "reasonable care," in its professional capacity as a loan servicer, to provide accurate information as to whether Mr. Peckey's mortgage loan was eligible to participate in HAFA programs prior to advising him that he was approved for said programs.

176.   At all times relevant herein, Defendant BANA was acting as Plaintiff's lender and loan servicer, had a duty to exercise "reasonable care and skill" to maintain proper and accurate loan records and attend to the maintenance, accounting and servicing of loan records, including, but not limited to accurately recording the Deed in Lieu of Foreclosure.

177.   At all times relevant herein, Defendant BANA was acting as Plaintiff's lender and loan servicer, had a duty to exercise "reasonable care and skill" to maintain proper and accurate loan records and attend to the maintenance, accounting and servicing of loan records, including, but not limited to refrain from transferring the mortgage loan to SLS once the DIL was executed.

### (b) **BANA's Breach of Duty of Care**

178.    Defendant requested assistance mitigating his losses and was advised by BANA that he qualified for HAFA programs.

179.    BANA breached its duty of care by not providing truthful or accurate information when asserting, in its June 29, 2012 letter, that Plaintiff was approved to participate in the HAFA DIL program.

180.    BANA breached its duty of care by not providing truthful or accurate information when asserting, in its November 9, 2012 letter, that Plaintiff was not eligible for a HAFA Deed in Lieu.

181.    BANA breached its duty of care by making false representations that the loan would be considered settled and the deficiency forgiven if Mr. Peckey "complied with the terms of the deed-in-lieu."

182.    BANA breached its duty of care by failing to keep proper and accurate loan records because presumably, BANA would not have acted in a contradictory manner by reporting the DIL to the credit bureaus while concurrently transferring the servicing of the loan to SLS had it kept proper and accurate loan records.

183.    BANA breached its duty of care by failing to release the lien and record the deed on the Maryland land records.

### (c) *Causal Relationship between the Breach and the Harm*

184.    Mr. Peckey relied on BANA's representation that if he complied with the terms of the DIL, he would be released from his obligations under the terms of the mortgage.

185.  Mr. Peckey surrendered the first home he worked so hard to purchase solely based on BANA's representation that he would no longer be obligated under the terms of the original mortgage loan if he surrendered the deed and that any deficiency would be forgiven.

186.  If BANA had performed its duty as a servicer, it would not have offered loss mitigation options to Plaintiff if he was not eligible to participate in those programs.

187.  If BANA's records were accurate it would not have wrongfully transferred the servicing rights of the mortgage loan to SLS.

188.  If BANA's records were accurate it would not have sent Mr. Peckey the November 9, 2012 denial letter after it paid him the $3,000.00 relocation check; reported the deed in lieu to the credit bureau; and provided Mr. Peckey and the Internal Revenue Service with a 1099-C[6].

*(d)*        ***Damages as a Proximate Result of BANA's Negligence***

189.  Based on said reliance, Mr. Peckey paid $25,000.00 to Real Time Resolutions to pay-off his second mortgage, an amount he would not have paid, if BANA informed him that he was not eligible to participate in HAFA programs.

190.  Based on said reliance, Mr. Peckey paid $3,298.00 to purchase a new air conditioner, an amount he would not have paid if he had been informed that he was not eligible to participate in HAFA programs.

191.  Based on said reliance, Mr. Peckey surrendered the property to BANA and forwent other loss mitigation options.

192.  As a direct and proximate result of BANA's failure to use reasonable care, as set forth above, Plaintiff suffered actual, general and special damages in an amount to be determined at trial.

---

[6] It is unclear to Plaintiff how BANA, the servicer and not the owner of the note, could provide Mr. Peckey with a 1099-C.

193.  If BANA's records were accurate it would not have sent Mr. Peckey the November 9, 2012 denial letter after it paid him the $3,000.00 relocation check; reported the deed in lieu to the credit bureau; and provided Mr. Peckey and the Internal Revenue Service with a 1099-C form.

WHEREFORE, Plaintiff prays that the Court: Award Plaintiff compensatory damages in an amount to be determined by the jury; award pre-judgment interest; award Plaintiff reasonable costs and attorney's fees and; award Plaintiff such other and further relief as the Court may deem just and proper.

## COUNT FIVE
## <u>COMMON LAW FRAUD AGAINST BANK OF AMERICA</u>

194.    Plaintiff restates and incorporates by reference the allegations in all preceding paragraphs, inclusive, as though set forth herein.

**<u>Facts Supporting BANA's Common Law Fraud</u>**

*(a) <u>False Representations</u>*

195.    BANA made false representations of material facts to Mr. Peckey, by advising him that he was eligible and approved for the HAFA DIL then subsequently advising him that he was not eligible.

*(b) <u>Knowledge of Speaker</u>*

196.    BANA did not have the present intent to keep the promises of relieving Mr. Peckey from all financial obligations in exchange for the Deed, because it was transferring the servicing rights to SLS while concurrently offering Plaintiff a DIL.

197.    BANA knew of the falsity of its misrepresentations, or made them with such reckless indifference to the truth, that it would be reasonable to charge it with knowledge of their falsity as evidenced by the letter approving Plaintiff for the DIL, the letter advising him that his

mortgage loan was being transferred to SLS, and by sending him a letter stating he was not eligible for a DIL after the contract was fully performed.

### (c) *Purpose of Defrauding*

198.    It is upon information and belief that BANA intended Mr. Peckey to act in reliance on its misrepresentations.  BANA would obtain possession of the Property, receive a tax break by writing-off the "loss," make a claim on the mortgage insurance and keep the deed in Plaintiff's name  to avoid paying transfer taxes and HOA fees.

### (d) *Justifiable Reliance*

199.    BANA claimed to employ "experts in deed in lieu solutions" so Mr. Peckey, was justified in relying on BANA's statement that he was eligible for a DIL.

200.    As a mortgage servicer, who sends out correspondence stating "we want to help you avoid foreclosure," Mr. Peckey was justified in relying on BANA's promise that if he complied with the terms of the DIL, he would be released from all financial obligations.

### (e) *Causation and Damages*

201.    As a direct and proximate cause of BANA's wrongful conduct, Plaintiff suffered the damages outlined in paragraphs 80 a through h of this Complaint.

**WHEREFORE**, Plaintiff respectfully requests the Court enter judgment in his favor and against the Defendant for: Compensatory damages in an amount to be determined at trial; Punitive damages; prejudgment and post judgment interest,  the costs of this action and further relief as this court finds necessary and proper.

## COUNT SIX
## PROMISSORY ESTOPPEL AGAINST BANK OF AMERICA

202.    Plaintiff restates and incorporates by reference the allegations in all preceding paragraphs, inclusive as though set forth herein.

### (a) *Clear and Definite Promise*

203.     There was a clear and definite promise made by BANA to Mr. Peckey that if he followed its instructions it would accept a DIL and the mortgage loan would be considered settled.

### (b) *Reasonable Expectation of Inducement*

204.     BANA had a reasonable expectation that its offer to forgive the deficiency and provide Mr. Peckey with a $3,000.00 relocation check, in exchange for the Deed to the Property would induce Mr. Peckey to agree to the terms.

### (c) *Actual Inducement*

205.     BANA's offer to forgive the deficiency induced Mr. Peckey to surrender his property.

### (d) *Detriment Can Only be Avoided if BANA Honors the DIL*

206.     BANA's failure to adhere to the terms of the DIL and transfer of the loan to SLS was a great detriment to Mr. Peckey because SLS is now attempting to collect the full amount of the mortgage loan from him.

207.     The Maryland Department of Assessments and Taxation (SDAT) website still reflects that Plaintiff is the owner of the Property.

208.     Because Mr. Peckey is the owner of record, he remains legally responsible for the HOA fees.

209.     Because Mr. Peckey is the owner of record he can be held legally responsible for any personal injury that may occur on the Property.

210.     Mr. Peckey is unable to obtain a mortgage loan because SLS is still reporting the mortgage as owed.

**WHEREFORE,** having set forth the above-described legally sufficient causes of actions against the Defendants, Plaintiff prays that this Court: Assume jurisdiction of this case; Grant a permanent injunction, enjoining Defendants' employees, affiliates and subsidiaries, from continuing to harm Plaintiff by attempting to collect on the original note; Order specific performance of Defendant's contractual obligations together with other relief required by contract and law; Award compensatory damages against defendant not less than $500,000.00; Award actual damages in the maximum amount allowed by law; Award punitive and exemplary damages against Defendant in a sum to be determined at trial; Award Plaintiff the cost of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and Award such other relief as the court deems appropriate.

**COUNT SEVEN**
**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")**
**ACT 15 U.S.C § 1692, ET SEQ. AGAINST SPECIALIZED LOAN SERVICING, LLC**

211. Plaintiff incorporates by reference all preceding paragraphs, inclusive, as though fully set forth herein.

***Facts to Support SLS' Violations of the FDCPA***

**(1) *Attempt to Collect Debt***

212. SLS attempted to collect money for a mortgage loan from Mr. Peckey verbally and via various letters and notices as described more fully in paragraphs 57, 58 & 62 through 86.

**(2) *Plaintiff is a Consumer***

213. Plaintiff is a natural person who allegedly obligated himself to pay the mortgage loan.

**(3) *Consumer Debt***

214. The debt, a home mortgage loan, was incurred for personal purposes, within the purview of the FDCPA 15 U.S.C. § 1692a(5).

### *(4) __Defendant SLS is a Debt Collector__*

215. SLS is debt collector within the meaning of the FDCPA, as defined at 15 U.S.C § 1692a(6). Under the statute, a loan servicer will become a debt collector if the debt was in default or was treated as such when it was acquired.

216. Furthermore, in its' correspondence, SLS includes the disclosures required by the FDCPA: "this is an attempt to collect a debt and any information obtained will be used for that purpose" and/or that the communication is from a debt collector.

### *(5) __Violation of the FDCPA__*

217. SLS has been attempting to collect on a debt that no longer exists by virtue of the HAFA DIL that was executed on or about July 14, 2012.

218. Mr. Peckey provided SLS with a copy of the Deed-in-Lieu via facsimile and email.

219. SLS has ignored the proof and is still attempting to collect this alleged debt from Plaintiff in direct breach of the fully executed Deed-in-Lieu of foreclosure.

220. SLS falsely represented the character, amount, and legal status of the debt by actions including but not limited to telling Plaintiff verbally and through numerous monthly mortgage statements sent to him that there was a: "current payment," "Past Due Payments," "Outstanding Late Charges/Fees," and "total "amount due" on his mortgage when no such debt exists.

221. As a result of these violations, Plaintiff has been required to devote countless and unnecessary hours to seek to correct the erroneous information and was forced to file this instant lawsuit.

222. Plaintiff is therefore entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendant SLS pursuant to 15 U.S.C. §1692k.

WHEREFORE, Plaintiff demands judgment against Defendant SLS, for: Any actual damages sustained by Plaintiff as a result of SLS' failure to comply with the FDCPA; 15 U.S.C. § 1692K(a)(1); additional damages as the court may allow, but not exceeding $1,000; 15 U.S.C. § 1692K(a)(2)(A); the costs of the action together with reasonable attorney's fees as determined by the court. 15 U.S.C. § 1692K(a)(3) and, other relief as the Court may find necessary and appropriate.

## COUNT EIGHT
### MARYLAND CONSUMER DEBT COLLECTION ACT ("MCDCA"), MD. CODE ANN., COM. LAW, §§ 14-201 *ET SEQ.* AGAINST SLS

223. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth in this paragraph herein.

224. The MCDCA provides that a debt collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." MD. Code Ann. Com. Law 23 § 14-202(8). ("[K]nowledge can either mean actual knowledge or that the defendant acted with reckless disregard.").

225. Defendant SLS attempted to collect a debt arising from a mortgage on Plaintiff's primary residence and is thus a "collector" within the meaning of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 (b).

226. SLS' conduct violated the MCDCA's prohibition on unfair or deceptive trade practice by sending letters, mortgage statements and notices to Mr. Peckey that stated he was delinquent in his mortgage payments and was required to pay over $68,000.00 to cure the default and that he was in danger of losing his home to foreclosure.

227. Despite receiving numerous communications and multiple copies of Mr. Peckey's executed DIL, SLS continued to demand payment on this phantom debt.

228. Despite having received proof of Mr. Peckey's DIL, SLS continued to send mortgage statements in an attempt to enforce this phantom debt.

229. Despite having received proof of Mr. Peckey's DIL, SLS continued to threaten Mr. Peckey with foreclosure, which would have further damaged his credit worthiness.

230. Despite having received proof of Mr. Peckey's DIL, Defendant SLS reported to Equifax that Peckey had a total outstanding balance of $276,476.00 due; that he was $62,634.00 in arrears, and that his payments were over 180 days past due. Credit Report Attached as **Exhibit 29**.

231. Despite having received proof of Mr. Peckey's DIL, SLS reported to TransUnion that Mr. Peckey had a balance of $75,883.00 and reported that his payments were 180 days past due. Credit Report Attached as **Exhibit 30**.

232. Despite having received proof of Mr. Peckey's DIL, SLS reported to Experian that Mr. Peckey had a balance of $75,883.00 and that his payments were over 180 days past due. Credit Report Attached as **Exhibit 31**.

233. The wrongfully, and improperly reported negative information described above, not only lowered Plaintiff's credit scores; it prevented him from increasing his credit score.

234. Any "person" who violates any provision of this subtitle is liable to the person affected by the violation for all damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury and for reasonable attorney fees incurred by the person damaged. *See* §14-203 & § 14-304.

235. As a direct result of SLS' claiming a right with the knowledge that it did not exits, the Plaintiff suffered injury, loss and damages including but not limited to: decreased credit score, emotional distress including but not limited to depression and extreme anxiety.

236. SLS' violations for the MCDCA were performed during the servicing of the Plaintiff's mortgage loan on behalf of U.S. Bank. Accordingly, U.S. Bank is liable for SLS' bad acts under a theory of respondeat superior and is jointly and severally liable for SLS' MCDCA violations.

WHEREFORE, Plaintiff demands judgment in the amount of to be determined by a jury, for damages against SLS and U.S. Bank for emotional distress or mental anguish; be awarded his reasonable attorney's fees and costs and; that his claim should include such other and further relief as the Court deems just and proper.

## COUNT NINE
## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT ("MCPA ) MD Code Ann. Title 13 et seq. AGAINST SLS

237. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth in this paragraph herein.

238. Plaintiff is a consumer within the meaning of Title 13 Subtitle 1 §13-101(c)(l).

239. Defendant is a merchant within the meaning of Title 13 Subtitle 1 §13-101(g)(l).

240. Section §13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. If Defendant's conduct proves to violate the MCDCA, as alleged in this Complaint, then SLS' conduct is also a *per se* violation of the MCPA. MD. Code Ann.; Comm. Law § 13-301(14)(iii).

241. SLS' violations of the MCPA were performed during the servicing of Plaintiff's mortgage loan on behalf of U.S. Bank. Accordingly, U.S. Bank is liable for SLS' bad acts under the theory of respondeat superior and is jointly and severally liable for SLS' MCPA violations.

WHEREFORE, Plaintiff demands judgment in the amount of to be determined by a jury, for damages against Defendant for violations pursuant to MD. Commercial Law Code Ann. Title

13 Subtitle 4 §13-410; reasonable attorney's fees and costs; and that his claim should include such other and further relief as the Court deems just and proper.

**COUNT TEN**
**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")**
**ACT 15 U.S.C § 1692, ET SEQ. AGAINST NATIONSTAR**

242. Plaintiff incorporates by reference all preceding paragraphs, inclusive, as though fully set forth herein.

243. Plaintiff is a natural person who is allegedly obligated to pay the mortgage loan.

244. The debt, a home mortgage loan, was incurred for personal purposes, within the purview of the FDCPA 15 U.S.C. § 1692a(5).

245. Nationstar is debt collector within the meaning of the FDCPA, as defined at 15 U.S.C § 1692a(6). Under the statute, a loan servicer will become a debt collector if the debt was in default or was treated as such when it was acquired.

246. Nationstar violated 15 U.S.C.A. 1692e(1)(2)(A) by:

  a.  falsely characterizing that it was servicing a valid mortgage loan;
  b. falsely reporting the loan as delinquent to Equifax claiming Plaintiff had a past due amount of $110,207;
  c. falsely reporting the loan as delinquent to TransUnion claiming that Plaintiff had a past due amount of $65,000; and
  d. Falsely reporting the loan as delinquent to Experian, claiming Plaintiff had a past due amount of $110,207.00.

247. Nationstar violated 15 U.S.C.A. 1692e(5) by filing a foreclosure action against Mr. Peckey in Baltimore County Circuit Court, case number 03C15002496.

248. Nationstar began a foreclosure action against Mr. Peckey with actual knowledge, or reckless disregard, the debt no longer exists by virtue of the HAFA DIL that was executed on or about July 14, 2012 and that this action was pending in U.S. District Court of Maryland.

249. Nationstar failed to send Mr. Peckey a "welcome letter" advising him that the transfer of the mortgage loan had occurred.

250. Had Mr. Peckey been informed of the wrongful transfer of the mortgage from Defendant SLS to Nationstar, it would have given him the opportunity to provide Nationstar with a copy of the Deed in Lieu and a copy of the instant action.

251. Nationstar falsely represented the character, amount, and legal status of the debt by actions including but not limited to negatively reporting Mr. Peckey to the credit bureaus and filing a foreclosure action against him in Maryland.

252. As a result of these violations, Plaintiff's credit score has been further damaged. Specifically in May, 2014, after SLS had removed the negative trade-line on his credit report his Transunion credit score jumped to 806. See Transunion Report dated 5/5/14 attached as **Exhibit 34.**

253. As of April, 15, 2015, Mr. Peckey's credit score plummeted to 537 for Equifax, 542 for Experian and 603 for TransUnion. See credit scores attached as **Exhibit 35.**

254. The only significant change on Plaintiff's credit report is Nationstar's negative reporting.

255. It is upon information and belief that in June 2014, and March 2015, Nationstar wrongfully reported Mr. Peckey's address as 8742 Lucent Blvd. Highlands Ranch CO 80129. See **Exhibit 36** at page 2.

256. Mr. Peckey has also been denied credit as a result of Nationstar's negative reporting.

257. Although Nationstar was contacted by letter on April 27, 2015, and advised of the wrongful foreclosure action, to date, Nationstar has refused to correct the wrongful reporting,

remove the trade line from his credit report and refused to dismiss the foreclosure action against Mr. Peckey forcing him to add Nationstar to this lawsuit.

258. Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendant Nationstar pursuant to 15 U.S.C. §1692k.

259. Nationstar's violations of the FDCPA were performed during the servicing of Plaintiff's mortgage loan on behalf of U.S. Bank. Accordingly, U.S. Bank is liable for SLS' bad acts under a theory of respondeat superior and is jointly and severally liable for Nationstar's FDCPA violations.

WHEREFORE, Plaintiff demands judgment against Defendant Nationstar, for: Any actual damages sustained by Plaintiff as a result of Nationstar's failure to comply with the FDCPA; 15 U.S.C. § 1692K(a)(1); additional damages as the court may allow, but not exceeding $1,000; 15 U.S.C. § 1692K(a)(2)(A); the costs of the action together with reasonable attorney's fees as determined by the court. 15 U.S.C. § 1692K(a)(3) and, other relief as the Court may find necessary and appropriate.

## COUNT ELEVEN
## MARYLAND CONSUMER DEBT COLLECTION ACT ("MCDCA"), MD. CODE ANN., COM. LAW, §§ 14-201 *ET SEQ.*, AGAINST NATIONSTAR

260. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth in this paragraph herein.

261. The MCDCA provides that a debt collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." MD. Code Ann. Com. Law 23 § 14-202(8). ("[K]nowledge can either mean actual knowledge or that the defendant acted with reckless disregard.").

262. Defendant Nationstar, is a "person" who attempted to collect a debt arising from a mortgage on Plaintiff's primary residence and is thus a "collector" within the meaning of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 (b), 14-201 (c) & 14-201 (d). See Affidavit of Debt claiming Plaintiff owes $316,839.75, attached as **Exhibit 37.** See also Nationstar's Mortgage Payoff Statement of $344,759.78 attached as **Exhibit 38.**

263. Nationstar's conduct violated the MCDCA's prohibition on unfair or deceptive trade practices by falsely reporting that Mr. Peckey's mortgage loan is delinquent. *See* § 14-201(3).

264. Nationstar's conduct violated the MCDCA's prohibition on unfair or deceptive trade practices by initiating a foreclosure action against Mr. Peckey. *See* § 14-201(8).

265. Despite receiving communications advising Nationstar of the Deed in Lieu and this instant action, Nationstar has refused to correct the reporting to the credit bureaus and had refused to dismiss the foreclosure sale further damaging his credit worthiness.

266. The wrongfully, and improperly reported negative information described above, not only lowered Plaintiff's credit scores; it prevented him from increasing his credit score.

267. Any "person" who violates any provision of this subtitle is liable to the person affected by the violation for all damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury and for reasonable attorney fees incurred by the person damaged. *See* §14-203 & § 14-304.

268. As a direct result of Nationstar's claiming a right with the knowledge that it did not exits, the Plaintiff suffered injury, loss and damages including but not limited to: a decreased credit score, emotional distress including but not limited to depression and extreme anxiety.

WHEREFORE, Plaintiff demands judgment in the amount of to be determined by a jury, for damages against Defendant for emotional distress or mental anguish; be awarded his

reasonable attorney's fees and costs and; that his claim should include such other and further relief as the Court deems just and proper.

## COUNT TWELVE
## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT ("MCPA ) MD Code Ann. Title 13 et seq. AGAINST NATIONSTAR

269.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth in this paragraph herein.

270.    Plaintiff is a consumer within the meaning of Title 13 Subtitle 1 §13-101(c)(l).

271.    Defendant Nationstar is a merchant within the meaning of Title 13 Subtitle 1 §13-101(g)(l).

272.    Section §13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.

273.    If Nationstar's conduct proves to violate the MCDCA, as alleged in this Complaint, then its conduct is also a *per se* violation of the MCPA. MD. Code Ann.; Comm. Law § 13-301(14)(iii).

274.    Nationstar's violations for the MCPA were performed during the servicing of the Plaintiff's mortgage loan on behalf of U.S. Bank. Accordingly, U.S. Bank is liable for Nationstar's bad acts under a theory of respondeat superior and is jointly and severally liable for Nationstar's MCPA violations.

WHEREFORE, Plaintiff demands judgment in the amount of to be determined by a jury, for damages against Defendant for violations pursuant to MD Commercial Law Code Ann. Title 13 Subtitle 4 §13-410; reasonable attorney's fees and costs; and that his claim should include such other and further relief as the Court deems just and proper.

# COUNT THIRTEEN
## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

275.    Plaintiff incorporates all preceding paragraphs as set forth fully herein.

276.    Plaintiff seeks a declaration of his rights with respect to the ownership of the property located at 7 Alexander Court, Owings Mills, MD 21117.

277.    Plaintiff seeks a Court Order preventing Nationstar and U.S. Bank from executing a foreclosure sale against him.

278.    Plaintiff requests a declaration that he is no longer the owner of the property located at 7 Alexander Court, Owings Mills, MD 21117.

279.    Plaintiff further requests that BANA be ordered to file the Deed in Lieu of Foreclosure with Maryland land records.

280.    An actual controversy exists as to the true owner of the property.

281.    Declaratory relief is appropriate pursuant to 28 U.S.C. 2201 and 2202 Md. Code Ann. and Cts. & Jud. Pro 3-401 to 3-415.

282.    The public interest is served by preventing Nationstar from continuing to violate Mr. Peckey's rights by: 1) exposing him to liability as the record owner of the property, 2) exposing him to home owner's association fees, 3) tax consequences, 4) preventing him from obtaining a mortgage loan and , 5) reporting him as delinquent to the credit bureaus.

283.    The burden imposed on Nationstar by requiring it to abide by the terms of the Deed in Lieu of Foreclosure, Maryland laws and regulations is substantially outweighed by the harm suffered by Plaintiff by allowing these Defendants to ignore the laws, regulations and threaten continued foreclosure proceedings.

WHEREFORE, Plaintiff respectfully requests the Court order appropriate relief to rectify past violations of law and prevent further violations of law; including a permanent injunction on any attempts to collect the arrearages Defendants' falsely claim are owed.

## COUNT FOURTEEN
### RESPONDEAT SUPERIOR AGAINST U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2006-12

284.     Plaintiffs reiterate and incorporate herein by reference the allegations set forth in paragraphs 1 through 285 above as if fully set forth herein.

285.     At all times relevant hereto, Defendants, Bank of America, Specialized Loan Servicing, and Nationstar ("Loan Servicers") were servicing the alleged mortgage loan subject to this lawsuit.

286.     As described herein, the Loan Servicers violated consumer protection laws and state laws against Mr. Peckey by attempting to collect on a debt that no longer existed, charging him late fees and penalties, negatively reporting him to the three major credit bureaus.

287.     The Loan Servicers acts or omissions were a proximate cause of the Mr. Peckey's damages as described herein and directly resulted in economic loss and emotional distress, and loss of credit worthiness.

288.     The Loan Servicers acts or omissions were committed within the scope of servicing mortgage loans on behalf of U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2006-12.

289.     The Loan Servicers actions generated revenue for U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2006-12 84.

290.    As the holder of the Note and Loan subject to this lawsuit, the Loan Servicers

employer, U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2006-12, is

responsible for the acts alleged in this Complaint.

## PRAYER FO RELIEF

WHEREFORE, Plaintiff respectfully pray that this Court:

A.    Assume jurisdiction of this case;

B.    Enter  a  judgment against these Defendants on each count alleged in the Complaint complained of herein;

C.    Grant a permanent or final injunction enjoining Defendants' employees, affiliates and subsidiaries, from continuing to harm Plaintiff;

D.    Order    specific performance of Defendants' contractual obligations together with other relief required by contract and law;

E.    Award compensatorydamages    against    defendant    not    less    than $1,000,000.00;

F.    Award actual damages statutory in the maximum amount allowed by law;

G.    Award punitive and exemplary damages against Defendants in  a  sum according to proof at trial;

H.    Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

I.    Award such other relief as the court deems appropriate.


## DEMAND FOR A JURY TRIAL

Respectfully submitted,

/s/ Sari K. Kurland
Sari Karson Kurland, Esq.
Federal Bar No. 09174
211 Jersey Lane
Rockville, MD 20850
(301) 424-2834,
Fax (240) 715-4658
Attorney for Plaintiff
sari@sarikurland.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2015, I electronically filed the foregoing Plaintiff's Second Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

| | |
|---|---|
| Mary Catherine Zinsner | Veronica D. Jackson |
| U.S. District Court, D. Md. Bar No. 11763 | Federal Bar No. 18532 |
| Troutman Sanders LLP | MCGUIREWOODS LLP |
| 1850 Towers Crescent Plaza, Ste. 500 | 7 Saint Paul Street, Suite 1000 |
| Tysons Corner, VA 22182 | Baltimore, Maryland 21202 |
| Telephone: 703-734-4363 | (410) 659-4436 |
| Facsimile: 703-734-4340 | (410) 659-4471 (Fax) |
| mary.zinsner@troutmansanders.com | vdjackson@mcguirewoods.com |
| *Counsel for Defendant SLS, LLC.* | *Counsel for Defendant Bank of America, N.A.* |

*Courtesy Copy Sent via First Class Mail to:*

Jeff Nadel
Scott E. Nadel
Law Offices of Jeffrey Nadel
4041 Powder Mill Road
Suite 415
Calverston, MD 20705

*Counsel for Nationstar in the Foreclosure Action*

/s/Sari Karson Kurland
Sari Karson Kurland, Esq.